**Electronically Filed
Supreme Court
SCWC-16-0000200
19-MAR-2019
01:39 PM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

CAROLYN UYEDA and JAY UYEDA,
Respondents/Plaintiffs-Appellees,

vs.

EVAN SCHERMER,
Petitioner/Defendant-Appellant.

_____

SCWC-16-0000200

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000200; CIVIL NO. 3SS 15-1-153K)

MARCH 19, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

Respondents/Plaintiffs-Appellees Carolyn and Jay Uyeda ("the Uyedas") sought summary judgment and an injunction against Petitioner/Defendant-Appellant Evan Schermer ("Schermer") in the District Court of the Third Circuit ("district court") based on the testimony and findings of fact in an earlier district court civil case in which they prevailed against Schermer. The district court granted their motion for summary judgment and

their petition for injunction.  The Intermediate Court of Appeals ("ICA") affirmed with regard to Carolyn Uyeda and Schermer sought certiorari.  Petitioner Schermer argues that the judicially noticed facts that formed the basis of the judgment and injunction against him were improperly admitted because the previous case had a lower burden of proof.  We granted his application for certiorari, and now vacate the judgments against him.

## I.   BACKGROUND

### A.   Settlement Agreement

On September 22, 2014, the Uyedas and Schermer entered into a Mutual Settlement and Release Agreement ("Settlement Agreement") for the purpose of resolving all claims in a civil case numbered 3SS 14-1-134K ("Case 134").  In the Settlement Agreement, the Uyedas and Schermer agreed that neither party would directly or indirectly contact the other or come within 100 yards of the other for three years, and declared that all records of interactions between Carolyn Uyeda and Evan Schermer had been destroyed or relinquished.  In paragraph 7 of the Settlement Agreement, the parties agreed that breach of the agreement could result in an action for permanent injunction:

> 7.   Should any Party violate the terms of this agreement, the non-breaching Party(ies) shall have the right to file an action for a permanent injunction against harassment against the other Party(ies) in the District Court of the Third Circuit, North and South Kona Division, State of Hawaii.  Upon proof that the other Party(ies)

> has/have violated either paragraph 1 or 2 of this
> Agreement, the prevailing Party(ies) shall be entitled to a
> permanent injunction against harassment against the other
> Party(ies) for the longest term that the Court can grant,
> in addition to reasonable attorney's fees and costs.

The parties also agreed that in the event of a breach of the Settlement Agreement, each could bring an action for breach of contract against the other to seek general and punitive damages. Case 134 was dismissed with prejudice by the district court.

## B. District Court Proceedings

On October 25, 2015, the Uyedas submitted to the district court a Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment against Schermer in a second civil case, numbered 3SS 15-1-153K ("Case 153" or "the present case"). The Uyedas submitted a copy of the Settlement Agreement under seal as an exhibit attached to the petition. The judge signed a temporary restraining order ("TRO") on October 27, 2015; on November 10, 2015, the TRO was extended to December 15, 2015. On October 27, 2015, the Uyedas filed a third civil action against Schermer in district court, numbered 3RC 15-1-639K, ("Case 639" or "the breach of contract case") alleging a breach of the Settlement Agreement. The present case arises from Case 153.

Cases 153 and 639 both came before the district court on December 15, 2015.[1] A bench trial was held on Case 639, the

---

[1] The Honorable Margaret Masunaga presided.

breach of contract case. During the trial, the court heard testimony from Schermer and Carolyn Uyeda, and received into evidence exhibits purporting to show Schermer's alleged violations. The court also took judicial notice of the Settlement Agreement, which was sealed by the court in Case 134. The court found that Schermer breached the Settlement Agreement by putting an advertisement in the newspaper wishing Carolyn Uyeda a happy birthday, sending a message to Carolyn Uyeda through Facebook, and attempting to contact Carolyn Uyeda by sending a message to a third party, her stepbrother Flavio Nucci, through Facebook. The court found in favor of the Uyedas and awarded them nominal damages of $1.00, plus costs and fees.

With regard to Case 153, in which the Uyedas sought an injunction against harassment, the district court set a March 8, 2016 trial date and extended the TRO to that date. On January 7, 2016, the Uyedas filed a motion for summary judgment. The Uyedas requested that, in considering their motion, the court take judicial notice of the Settlement Agreement, which was filed under seal in Case 134, and the court's own findings in Case 639 regarding the birthday advertisement and the Facebook messages. The Uyedas argued that Hawai'i Rules of Evidence (HRE) Rule 201 permitted the court to take judicial notice of its findings of fact in Case 639. HRE Rule 201 allows for judicial notice of adjudicative facts:

(a) Scope of rule. This rule governs only judicial notice of adjudicative facts.

(b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) When discretionary. A court may take judicial notice, whether requested or not.

(d) When mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e) Opportunity to be heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(f) Time of taking notice. Judicial notice may be taken at any stage of the proceeding.

(g) Instructing jury. In a civil proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

Schermer submitted a memorandum in opposition to the motion for summary judgment, arguing that his alleged conduct did not constitute harassment, and that the court could not rely on its own findings in Case 639 because a permanent injunction against harassment cannot be issued without a judicial finding that harassment has been proved by clear and convincing evidence, whereas the standard of proof in a breach of contract case is only preponderance of the evidence. Schermer also filed his own motion requesting either summary judgment, dismissal for failure to state a claim, or dismissal for lack of jurisdiction.

5

Schermer contended that because the Uyedas' claims arose from an intimate relationship, jurisdiction was exclusively with the Family Court of the Third Circuit ("family court").

At a hearing on the motions held on January 19, 2016, the district court granted the Uyedas' motion for summary judgment and granted them a permanent injunction for three years.  The court took judicial notice of the Settlement Agreement and "the entire record and files in 3RC 15-1-639K, including the testimony of Carolyn Uyeda, Evan Schermer, and the entire record and file and entire testimony of all parties in that case[,]" and found that there was no genuine issue of material fact as to the Uyedas' claims or defenses.  The court found "by clear and convincing evidence that harassment exists for purposes of the instant action."  Among the authorities the court cited were paragraph 7 of the Settlement Agreement, HRE Rule 201, "which allows Court to take judicial notice of adjudicative facts, specifically in case 3RC 15-1-639K and 3SS 14-1-134K," and Hawai'i Revised Statutes (HRS) § 604-10.5.  HRS § 604-10.5 (2016) gives courts the power to enjoin harassment, as defined:

> (a)  For the purposes of this section:
>
> "Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose.
>
> "Harassment" means:

(1) Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault; or

(2) An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual and serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.

(b) The district courts shall have the power to enjoin, prohibit, or temporarily restrain harassment.

. . . .

(g) . . . If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years.

In its Findings of Fact, Conclusions of Law and Order granting the Uyedas' motion for summary judgment, which was prepared by counsel for the Uyedas, the district court made the following findings of fact:

2. There are no genuine issues of material fact.

3. The Court has reviewed, and pursuant to Rule 201 of the Hawaii Rules of Evidence, has taken judicial notice of the parties, pleadings and holdings in Civil No. 3SS14-1-134K and Civil No. 3RC15-1-639K, along with the testimony introduced at the trial of Civil No. 3RC15-1-639K and the content of that *Mutual Settlement and Release Agreement* dated September 22, 2014, and signed by the parties and their counsel at the time of execution and filed with the Petition in this case.

4. That Respondent EVAN SCHERMER has engaged in an intentional and knowing course of conduct directed at Petitioners CAROLYN UYEDA and JAY UYEDA that seriously alarms or disturbs or continually bothers the Petitioners and serves no legitimate purpose, causing emotional distress to the Petitioners.

7

The district court also made the following conclusions of law:

> 1. That Petitioners have proven by clear and convincing evidence that they are entitled to an injunction against harassment against the Respondent based upon:
>
> a. Paragraph 7 of that *Mutual Settlement and Release Agreement* dated September 22, 2014, and the Court's findings in Civil No. 3RC15-1-639K; and
>
> b. Hawaii Revised Statutes, Section 604-10.5.

The court denied Schermer's motion for summary judgment or dismissal. Schermer moved for a new trial, and argued at the hearing on the motion that the court should not have taken judicial notice of the testimony from Case 639, but his motion for a new trial was denied.

**C. ICA Proceedings**

Schermer appealed to the ICA. On appeal, Schermer argued that the district court erred in granting summary judgment to the Uyedas because the requirements of HRS § 604-10.5 were not met and harassment as therein defined was not proven by clear and convincing evidence. Schermer, citing State v. Kotis, 91 Hawai'i 319, 341-42, 984 P.2d 78, 100-01 (1999), also argued that while the district court could take judicial notice of the existence of documents filed in the previous cases, it could not take judicial notice of the truth of the facts in those documents. He conceded, however, that he would be collaterally estopped from relitigating the facts or issues in Case 639. The Uyedas argued that the district court did not

8

abuse its discretion by taking judicial notice of its prior findings.

The ICA held that the district court did not err by granting the Uyedas' motion for summary judgment, by denying Schermer's motion for summary judgment, or by ordering an injunction against harassment with regards to Carolyn Uyeda, but vacated the judgment and injunction as to Jay Uyeda. Uyeda v. Schermer, No. CAAP-16-0000200, 2017 WL 4337165, at *3 (App. Sept. 19, 2017) (SDO). With regard to the district court taking judicial notice of the parties, pleadings, and holdings in Case 134, the ICA held that any error was harmless, because (1) there were no holdings, as Case 134 was dismissed with prejudice, and Schermer did not identify how he was prejudiced by the court taking notice of the parties and pleadings in the case; and (2) there was sufficient evidence from other sources to support the judgment in the present case. Id. at *2.

The ICA also held that it was proper under HRE Rule 201 for the district court to take judicial notice of its finding of fact in Case 639 that Schermer had breached the Settlement Agreement. Id. The ICA itself took judicial notice of Finding of Fact 3 from Case 639, which read:

> The Court finds that [Schermer] has breached the Settlement Agreement by: (1) indirect contact with the [Uyedas] by placing an advertisement in the *West Hawaii Today* newspaper on August 7, 8, 9, 2015, containing the picture of [Carolyn] with the caption "Happy Birthday Carolyn!!! Wishing you a great day!!!; (2) direct contact

> with [the Uyedas] by sending two (2) Facebook messages to [Carolyn] on October 4, 2015, one at 1:45 a.m. (HST) and one at 2:25 a.m. (HST); and (3) communication by [Schermer] with a third-party, Flavio Nucci, through a Facebook message on November 2, 2015.

Id. at *2 n.5 (brackets in original). Based on the "undisputed" and "authenticated" evidence of the Settlement Agreement, the birthday advertisement, and the Facebook messages, the ICA held that "there was no genuine issue as to whether Schermer intentionally and knowingly engaged in a course of conduct directed at Carolyn for an illegitimate purpose and, as a result, a reasonable person in Carolyn's position would have been consistently disturbed or continually bothered and emotionally distressed." Id. at *3. However, the ICA held that the district court erred by denying Schermer's summary judgment motion and granting the Uyedas' summary judgment motion as to Jay Uyeda, because the birthday advertisement and Facebook message to Carolyn were not "directed at" Jay, and the Facebook message to Nucci, even if directed at Jay, was a single act that could not constitute a "course of conduct." Id. (quoting HRS § 604-10.5(a)).

Chief Judge Nakamura filed a separate opinion, dissenting from the majority's decision to affirm the district court's grant of summary judgment with regard to Carolyn Uyeda. Id. at *3-*6 (Nakamura, C.J., dissenting). Chief Judge Nakamura argued that the district court erred in taking judicial notice

10

of the testimony presented at trial in Case 639 under HRE Rule 201 because the burden of proof in the breach of contract action (preponderance of the evidence) was lower that their burden of proof in the present case (clear and convincing evidence). Id. at *4-*5. "Given this difference in the Uyedas' burden of proof," Chief Judge Nakamura would have held that it was not appropriate "for the District Court to apply collateral estoppel to, or take judicial notice of, its findings in Case 639 as a basis for granting summary judgment." Id. at *5.

Even if judicial notice was appropriate, Chief Judge Nakamura argued that the findings in Case 639 that Schermer breached the Settlement Agreement were not sufficient to establish that, as a matter of law, Schermer committed harassment under HRS § 604-10.5. Id. He argued that the Uyedas did not present any evidence regarding the circumstances surrounding the attempted contacts or Carolyn Uyeda's reaction, and that the findings in Case 639, viewed in the light most favorable to Schermer, were insufficient to prove as a matter of law that Schermer had engaged in harassment as defined by statute. Id. Finally, Chief Judge Nakamura noted that an injunction against harassment can be imposed only if the statutory requirements are met, and that the district court was not bound to the remedy in a private agreement between the Uyedas and Schermer, nor was the agreement sufficient to

11

authorize the imposition of an injunction in the absence of the statutory requirements being met.  Id.  He expressed no opinion as to whether the Uyedas could establish their entitlement to an injunction under the statute, stating only that "based on what the Uyedas presented in support of their motion for summary judgment, neither Carolyn nor Jay established that they were entitled to summary judgment on their petition for an injunction against harassment under HRS § 604-10.5."  Id. at *6.

**D.  Supreme Court Proceedings**

Both Schermer and the Uyedas filed applications for writs of certiorari.  On May 23, 2016, Schermer's application was granted and the Uyedas' was denied.

In his application for certiorari, Schermer presented the following three questions:

> 1.  Whether the ICA gravely erred in concluding that the District Court did not err in taking judicial notice of the testimony presented at trail in a separate case, (Case 639), because that testimony was not the proper subject of judicial notice under HRE Rule 201?
>
> 2.  Whether the ICA gravely erred in concluding that an injunction against harassment under HRS § 604-10.5 could be imposed where the requirements of the statute have not been satisfied?
>
> 3.  Whether the ICA gravely erred in concluding that the record in this case is sufficient to support the District Court's grant of summary judgment in favor of either Carolyn Uyeda (Carolyn) or Jay Uyeda (Jay) on their petition for an injunction against harassment against Evan Schermer (Schermer)?

Schermer's application argued that all three questions should be answered in the affirmative.  With regard to the first question,

12

Schermer also adopted the argument from Chief Judge Nakamura's dissent that it was not appropriate for the district court to take judicial notice of the findings of fact in Case 639. With regard to the third question, Schermer argued that the district court lacked jurisdiction over the case, which he contended should have been heard by the family court, and that the district court's findings of fact and conclusions of law, including its finding that there were no genuine issues of material fact, were clearly erroneous.

## II. STANDARDS OF REVIEW

### A. Jurisdiction

"The existence of jurisdiction is a question of law that this court reviews de novo under the right/wrong standard." Bailey v. Duvauchelle, 135 Hawaiʻi 482, 488, 353 P.3d 1024, 1030 (2015) (brackets omitted) (quoting Amantiad v. Odum, 90 Hawaiʻi 152, 158, 977 P.2d 160, 166 (1999)).

### B. Judicial Notice

"The question of whether a particular fact is a proper subject for judicial notice is a question of law that is reviewed by this court de novo." Ditto v. McCurdy, 98 Hawaiʻi 123, 128, 44 P.3d 274, 279 (2002).

### C. Findings of Fact and Conclusions of Law

> We review a [trial] court's findings of fact under the clearly erroneous standard. A finding of fact is clearly erroneous when either the record lacks substantial evidence to support the finding, or, evidence exists to

13

> support the finding, but we are left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. We review a [trial] court's conclusions of law de novo under the right/wrong standard. Where a conclusion of law presents a mixed question of law and fact, we review this conclusion under the clearly erroneous standard. A mixed question of law and fact is a conclusion dependent upon the facts and circumstances of the particular case.

Narayan v. Ass'n of Apartment Owners of Kapalua Bay Condo., 140 Hawai'i 75, 83, 398 P.3d 664, 672 (2017) (internal citations and quotation marks omitted).

## D. Motion for Summary Judgment

"On appeal, the grant or denial of summary judgment is reviewed de novo." Ibbetson v. Kaiawe, 143 Hawai'i 1, 10, 422 P.3d 1, 10 (2018) (quoting Nuuanu Valley Ass'n v. City & Cty. of Honolulu, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008)).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. at 10-11, 422 P.3d at 10-11 (brackets omitted) (quoting Nuuanu Valley Ass'n, 119 Hawai'i at 96, 194 P.3d at 537).

> [W]here the non-movant bears the burden of proof at trial, a movant may demonstrate that there is no genuine issue of material fact by either: (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the non-movant will be unable to carry his or her burden of proof at trial.

14

Id. at 11, 422 P.3d at 11 (quoting Ralston v. Yim, 129 Hawai'i 46, 57, 292 P.3d 1276, 1287 (2013)).

E.  **Injunctive Relief**

"Generally, the granting or denying of injunctive relief rests with the sound discretion of the trial court and the trial court's decision will be sustained absent a showing of a manifest abuse of discretion."  In re Interest of FG, 142 Hawai'i 497, 503, 421 P.3d 1267, 1273 (2018) (quoting Sierra Club v. Dep't of Transp. of State of Hawai'i, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009)).  "A court abuses its discretion if it 'clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.'"  AC v. AC, 134 Hawai'i 221, 229, 339 P.3d 719, 727 (2014) (brackets omitted) (quoting Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992)).

### III.  DISCUSSION

A.  **The district court had jurisdiction to hear this case.**

Because "subject-matter jurisdiction is fundamental to a court's power to act on the merits of a case from the outset of the action," Schwartz v. State, 136 Hawai'i 258, 263, 361 P.3d 1161, 1166 (2015), we first consider Schermer's argument that the district court erred in denying his motion to dismiss for lack of jurisdiction.

15

In Schermer's combined motion for summary judgment and/or dismissal for failure to state a claim and/or dismissal for lack of jurisdiction, he argued that Carolyn Uyeda's petition was improperly filed in the district court, and should have instead been filed in the family court, because the relationship between Carolyn Uyeda and Schermer was one over which the family court has jurisdiction under statute. Specifically, Schermer claimed that his relationship with Carolyn Uyeda was "characterized by actions of an intimate or sexual nature," HRS § 586-1, and that jurisdiction was therefore conferred on the family court by HRS § 586-2.[2]  He also claimed that even though Jay Uyeda did not have to file a petition in the family court, Carolyn Uyeda could not "bootstrap[]" her claims onto Jay Uyeda's.  In denying Schermer's motion, the district court held that it had jurisdiction "over all parties and of the subject matter of this case[.]"  The ICA did not address the jurisdictional issue.

Schermer's jurisdictional argument fails because the action was filed under HRS § 604-10.5, the statute authorizing the district courts to enjoin and temporarily restrain harassment.  The Uyedas did not seek family court jurisdiction pursuant to HRS § 586-2 to obtain a protective order.

---

[2]  HRS § 586-2 (2018) provides, "An application for relief under this chapter may be filed in any family court in the circuit in which the petitioner resides.  Actions under this chapter shall be given docket priorities by the court."

Thus, the district court was correct in holding that it had jurisdiction over the parties and subject matter of the case, and the ICA did not err by failing to reverse the district court's denial of Schemer's motion for dismissal on the basis of jurisdiction.

**B.  The district court should not have taken judicial notice of the facts of Case 639.**

In granting the Uyedas' motion for summary judgment, the district court took judicial notice of certain adjudicative facts[3] from Case 134, the original case resolved by the Settlement Agreement, and Case 639, the breach of contract case decided in favor of the Uyedas.  At the motions hearing, the court stated that it was taking judicial notice of the Settlement Agreement and "the entire record and files" in Cases 134 and 639, "including the testimony of Carolyn Uyeda, Evan Schermer, and the entire record and file and entire testimony of all parties in that case."  In its Findings of Fact, Conclusions of Law and Order granting the Uyedas' motion, which was prepared by counsel for the Uyedas, the court stated that it had taken judicial notice of "the parties, pleadings and holdings" in both cases, "along with the testimony introduced at the trial of [Case 639] and the content of that [Settlement Agreement] dated

---

[3]     Adjudicative facts, as distinguished from legislative facts, "are the kinds of facts that are ordinarily decided by the trier of fact; for example, who did what to whom, when, where, how, and why."  State v. Puaoi, 78 Hawai'i 185, 190, 891 P.2d 272, 277 (1995).

17

September 22, 2014, and signed by the parties and their counsel at the time of execution and filed with the Petition in this case."

The ICA held that any error in taking judicial notice of the parties, pleadings, and holdings in both cases was harmless, and that the finding of fact in Case 639 that Schermer breached the Settlement Agreement was a proper subject of judicial notice. Uyeda, 2017 WL at *2. In his dissent, Chief Judge Nakamura argued that the district court erred in taking judicial notice of the testimony and findings of fact in Case 639. Id. at *4-*5 (Nakamura, C.J., dissenting). Schermer echoed these arguments in his application, challenging the district court's taking of judicial notice of the testimony and findings of fact presented in Case 639. However, he did not challenge the district court's decision to take judicial notice of the Settlement Agreement or any additional parts of the record in either Case 134 or Case 639.

1. **Proper scope of judicial notice**

HRE Rule 201(b) permits a court to take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In other words, "[a] fact is a

18

proper subject for judicial notice if it is common knowledge or easily verifiable." Almeida v. Correa, 51 Haw. 594, 605, 465 P.2d 563, 572 (1970). "The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records." State v. Akana, 68 Haw. 164, 165, 706 P.2d 1300, 1302 (1985). The "ready availability and accuracy" of court records, particularly those that are "the trial court's own file and in the court's immediate possession[,]" generally cannot be considered reasonably questionable. Id. at 166, 706 P.2d at 1302.

We have "indicated that a trial court may take judicial notice of 'the pleadings, findings of fact and conclusions of law' filed in a separate court proceeding[,]" Kotis, 91 Hawai'i at 341, 984 P.2d at 100 (quoting Fujii v. Osborne, 67 Haw. 322, 329, 687 P.2d 1333, 1338-39 (1984)), and have explicitly "validated the practice of taking judicial notice of a court's own records in an interrelated proceeding where the parties are the same[,]" Akana, 68 Haw. at 165, 706 P.2d at 1302. However, "[a] distinction must be carefully drawn between taking judicial notice of the existence of documents in the Court file as opposed to the truth of the facts asserted in those documents." Kotis, 91 Hawai'i at 342, 984 P.2d at 101 (quoting In re Snider Farms, Inc., 83 B.R. 977, 986 (N.D.Ind. 1988) (emphasis in original)). "Factual allegations,

19

conclusions, and findings[,] whether authored by the court, by the parties or their attorneys, or by third persons, should not be noticed to prove the truth of the matters asserted even though the material happens to be contained in court records." Addison M. Bowman, Hawaii Rules of Evidence Manual 2-5 (2014-15 ed.). A court "may only take judicial notice of the truth of facts asserted in documents such as orders, judgments, and findings of fact and conclusions of law because of the principles of collateral estoppel, res judicata, and the law of the case." Kotis, 91 Hawai'i at 342, 984 P.2d at 101 (quoting Snider Farms, 83 B.R. at 986 (emphasis in original)).

For example, in Akana, the issue was whether the trial court properly took notice of the court records in a criminal case which showed that Akana had been convicted of a felony while deciding the State's motion to revoke Akana's probation, one of the conditions of which was that he obey all laws. 68 Haw. at 164-65, 706 P.2d at 1302. The State requested that the court take judicial notice of the records, which the court was mandated to do under HRE Rule 201(d) so long as the facts of which it was taking judicial notice were consistent with HRE Rule 201(b). Id. at 165-66, 706 P.2d at 1302. We held that "the trial court was mandated to take judicial notice of the court records" in the criminal case. Id. at 166, 706 P.2d at 1302. The existence of a conviction properly recorded in court

records is an adjudicative fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." HRE Rule 201(b). But the facts underlying that conviction could not have been the proper subject of judicial notice.

Other jurisdictions make a similar distinction, permitting courts to take judicial notice of court records, but allowing them to take judicial notice of findings of fact for the truth of the matters asserted only for the purpose of determining collateral estoppel and res judicata. See, e.g., Thompson v. R.J. Reynolds Tobacco Co., 760 F.3d 913, 917–18 (8th Cir. 2014) (explaining that the district court properly took judicial notice of a previous judgment in a wrongful death case to determine whether the plaintiffs no longer had a viable wrongful death claim); Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (finding that taking judicial notice of the pleadings and orders in a prior case is proper before evaluating whether res judicata applied).

## 2. Testimony and findings of fact from the breach of contract case

In this case, the district court exceeded the proper scope of judicial notice with regard to Case 639, the breach of contract case, but it is not entirely clear how far beyond the proper scope it went. At the motions hearing, the district

court stated that it took notice of "the entire record and files" in Case 639, "including the testimony of Carolyn Uyeda, Evan Schermer, and the entire record and file and entire testimony of all parties in that case."  In its written order, the court wrote that it had taken judicial notice of "the parties, pleadings and holdings" in Case 639, as well as "the testimony introduced at the trial" of Case 639.  Because the court did not specify which testimony, findings of fact, or other evidence from Case 639 supported its findings of fact and conclusions of law in the present case, we are unable to determine exactly how much of the record of Case 639 was judicially noticed.  We therefore consider how much of the record in Case 639 was subject to judicial notice and determine whether the findings of fact and conclusions of law in this case could be supported by such evidence.

As laid out above, it would have been permissible for the district court to take judicial notice of the existence of the pleadings, findings of fact, and conclusions of law from Case 639.  Kotis, 91 Hawai'i at 341-42, 984 P.2d at 100-01.  The testimony from Case 639 was subject to the same restrictions, as part of the "court's own records in an interrelated proceeding where the parties are the same."  Akana, 68 Haw. at 165, 706 P.2d at 1302.  The district court could only have "take[n] judicial notice of the truth of facts asserted in documents such

as orders, judgments, and findings of fact and conclusions of law because of the principles of collateral estoppel, res judicata, and the law of the case." Kotis, 91 Hawai'i at 342, 984 P.2d at 101 (quoting Snider Farms, 83 B.R. at 986 (emphasis in original)).

As neither the doctrine of res judicata or of the law of the case are applicable here, we must determine whether it would have been appropriate for the district court to take judicial notice of the truth of the matters asserted in the findings of fact and conclusions of law in Case 639 for the purposes of collateral estoppel. Collateral estoppel, also referred to as issue preclusion, "may preclude the relitigation of a fact or issue that was previously determined in a prior action on a different claim or cause of action between the same parties or their privies" and applies "if the particular issue in question was actually litigated, finally decided, and essential to the earlier valid and final judgment." Dannenberg v. State, 139 Hawai'i 39, 59-60, 383 P.3d 1177, 1197-98 (2016) (emphases omitted); see Priceline.com, Inc. v. Dir. of Taxation, No. SCAP-17-0000367, 2019 WL 1011874, at *13 (Haw. Mar. 4, 2019) ("Issue preclusion . . . protects the core judicial power to render final decisions as to facts and law in specific controversies. . . . [I]ssue preclusion makes judicial determinations conclusive and prevents a party from repeatedly

23

litigating adverse decisions in the hopes of securing a more favorable outcome.").

However, as many other states have held, "a prior judicial decision cannot have issue preclusive effect if the plaintiff had a higher burden of proof in the earlier proceeding than in the later proceeding."  White v. City of Pasadena, 671 F.3d 918, 930 (9th Cir. 2012) (applying California law); see, e.g., Jarosz v. Palmer, 766 N.E.2d 482, 488 (Mass. 2002) (citing Restatement (Second) of Judgments § 28(4) (Am. Law Inst. 1982)); State v. Yelli, 530 N.W.2d 250, 254 (Neb. 1995) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4422 (1981)); Attorney Grievance Comm'n of Maryland v. Bear, 763 A.2d 175, 181 (Md. 2000) (finding that this proposition "seems to be generally accepted by federal and state courts").  To apply issue preclusion in cases where the burden was lower in the prior case "would be to hold, in effect, that the losing party in the first action would also have lost had a significantly different burden [been] imposed." Restatement (Second) of Judgments § 28 cmt. f (Am. Law Inst. 1982).

Case 639 was a breach of contract case, so the standard of proof was "preponderance of the evidence."  See Masaki v. Gen. Motors Corp., 71 Haw. 1, 14, 780 P.2d 566, 574 (1989).  The present case was brought under HRS § 604-10.5,

which permits the district court to enjoin harassment "[i]f the court finds by clear and convincing evidence" that harassment exists. HRS § 604-10.5(g). The "clear and convincing evidence" standard is "an intermediate standard of proof greater than a preponderance of the evidence, but less than proof beyond a reasonable doubt required in criminal cases." Masaki, 71 Haw. at 15, 780 P.2d at 574. Thus, the standard of proof in the present case was higher than it was in Case 639, so the truth of any facts asserted in the findings of fact and conclusions of law in Case 639 could not be noticed for the purpose of collateral estoppel.

**C. Because the district court erroneously took judicial notice of the facts of Case 639, its findings of fact, conclusions of law, and order granting summary judgment and an injunction to the Uyedas in this case were erroneous.**

Having concluded that the record of Case 639 was properly subject to judicial notice only as to its existence, and not for the facts asserted therein, the next consideration is whether the findings of fact, conclusion of law, judgment, and remedy in the present case withstand review absent judicial notice of the facts asserted in the record of Case 639. They do not.

At the time the Uyedas filed their motion for summary judgment, the substantive record in the present case consisted only of the Uyedas' petition and the attached exhibits and

25

declarations. Absent the improperly noticed facts asserted in the record of Case 639, the district court's findings that "[t]here are no genuine issues of material fact" and that "Respondent EVAN SCHERMER has engaged in an intentional and knowing course of conduct directed at Petitioners CAROLYN UYEDA and JAY UYEDA that seriously alarms or disturbs or continually bothers the Petitioners and serves no legitimate purpose, causing emotional distress to the Petitioners" were clearly erroneous, as they lacked any basis in the record other than the allegations in the Uyedas' petition.[4] Similarly, the district court's conclusions of law relying on those findings, namely that the Uyedas had proven by clear and convincing evidence that they are entitled to an injunction against harassment against Schermer under the Settlement Agreement and HRS § 604-10.5, were incorrect.

The district court also erred in granting the Uyedas' motion for summary judgment and in granting them injunctive relief. The grant of summary judgment was erroneous because, viewing all the properly admitted or noticed evidence in the

---

[4] The ICA held that, based on the copies of the birthday advertisement and the Facebook messages the Uyedas submitted to the district court in this case, there were no genuine issues of material fact as to whether Schermer's actions constituted harassment under HRS § 604-10.5(a)(2). However, whether these communications were an intentional and knowing course of conduct that would seriously alarm, consistently disturb, or continually bother Carolyn Uyeda, serve no legitimate purpose, and cause a reasonable person to suffer emotional distress was a genuine issue of material fact that could not be resolved on the face of the communications themselves. Thus, a summary judgment was inappropriate.

light most favorable to Schermer, the genuine issues of material fact were not resolved in favor of the Uyedas. And the grant of an injunction was an abuse of discretion because its issuance was not supported by "clear and convincing evidence," as required by statute. HRS § 604-10.5(g).

Furthermore, the Settlement Agreement did not, in the absence of statutory authority, entitle the Uyedas to an injunction based on a breach of the agreement. The statute authorizes the issuance of an injunction against harassment only when harassment has been proven by "clear and convincing evidence," HRS § 604-10.5(g), and a contractual agreement between two private parties cannot lower the statutory evidentiary burden nor grant the court power it would not otherwise have.

We need not determine whether the findings of fact, conclusions of law, grant of summary judgment, and issuance of an injunction would have been upheld if the improperly noticed evidence was properly admitted at trial. We only note that, on remand, the Uyedas must meet the requirements of HRS § 604-10.5 in order for an injunction to issue. And while a trial in the present case would involve much of the same evidence as was presented in Case 639, facts found in Case 639 have no issue preclusive effect in the present case given the increased burden of proof and the additional requirements of HRS § 604-10.5.

27

## IV.  CONCLUSION

For the foregoing reasons, the ICA's judgment and the district court's grant of summary judgment and injunction are vacated, and the case is remanded to the District Court of the Third Circuit for further proceedings consistent with this opinion.

Walter J. Rodby
for Petitioner

Lisa Strandtman
for Respondents

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

