JOSEPH E. BULGO *v.* G. N. T. ENOMOTO; CLERK
OF THE COUNTY OF MAUI AND ELMER F. CRAVALHO.

No. 4672.

JULY 19, 1967.

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This submission on agreed facts comes before this court in connection with the Governor's proclamation of May 9, 1967, under Act 47, Session Laws of Hawaii 1967, mentioned in *Bulgo* v. *County of Maui*, 50 Haw. 51, decided this day.

The factual background of the Governor's proclamation is set forth in *Bulgo* v. *County of Maui*, pp. 52-55, and will not be repeated here. The following are the additional facts material to the determination of the issues raised in the submission.

Plaintiff is the same Maui taxpayer who filed the complaint in *Bulgo* v. *County of Maui*.

Defendant Enomoto is the clerk of the county of Maui, who has issued a list of qualified candidates for Democratic nomination for Maui county chairman at the special primary election proclaimed by the Governor. He will hereafter be referred to as the clerk.

Defendant Cravalho is one of the Democratic candidates on the clerk's list. He was member and speaker of the House of Representatives of the Fourth State Legislature which passed Acts 47 and 88 of the Session Laws of Hawaii 1967. He resigned as such member and speaker of the House of Representatives in order to become a candidate for Maui county chairman and filed his nomination papers with the clerk on May 19, 1967.

Plaintiff demanded of the clerk that he strike Cravalho's name from the list of Democratic candidates, but the clerk refused to do so.

Plaintiff based his demand on Article III, Section 9, of the State constitution, which provides:

"No member of the legislature shall hold any other public office under the State, nor shall he, during the term for which he is elected or appointed, be elected or appointed to any public office or employment which shall have been created, or the emoluments whereof shall have been increased, by legislative act during such term. * * *"

It is plaintiff's contention that Act 47 created the office which Cravalho is seeking; that Act 88 increased the emoluments of that office; and Cravalho, as a member of the legislature which passed these acts, is disqualified under the quoted constitutional provision.

The county of Maui has appropriated $80,000 out of its general fund to defray the expenses of the special elections. The clerk will spend a part of this appropriation for the printing of ballots for the special primary election. The general fund is made up in part by real property tax collected from Maui taxpayers.

Upon these facts, the parties present the following questions in difference for determination by this court:

1. Does plaintiff have standing, as taxpayer, to obtain an

injunction restraining the clerk from expending any monies for the printing of ballots containing Cravalho's name for the special primary election proclaimed by the Governor?

2. Did Act 47 create the office of Maui county chairman within the meaning of Article III, Section 9, of the State constitution, thus disqualifying Cravalho from being elected to that office at the special elections proclaimed by the Governor?

3. Did Act 88 increase the emoluments of the office of Maui county chairman within the meaning of the same constitutional provision, thus disqualifying Cravalho from being elected to the office of Maui county chairman at the special elections proclaimed by the Governor?

4. Can a court issue an injunction to restrain the clerk from expending any moneys for the printing of ballots containing Cravalho's name for the special primary election proclaimed by the Governor?

We answer the first question in the affirmative. Plaintiff's standing to sue under the agreed facts in this submission is no different from his standing to sue in *Bulgo* v. *County of Maui.*

Our answer to the second question is in the negative. The office of Maui county chairman has existed for the past 55 years. Act 47 did nothing to bring the office into being. Nor did it change any of the incidents of the office. The Act merely provides for the holding of special elections for successor county chairman in a county where the chairman-elect dies before January 2 following the election. Such a provision does not result in the creation of an office. *Mayor & Commissioners of Westernport* v. *Green,* 144 Md. 85, 124 A. 403. Disqualification for office will not be extended to persons who do not come clearly within the scope of the applicable constitutional provision. *State* v. *Gooding,* 22 Idaho 128, 124 P. 791.

Plaintiff relies on *State ex rel. Jugler* v. *Grover,* 102 Utah 41, 125 P.2d 807. In that case, a legislator who participated in the enactment of an amendment to a statute, which provided for the

appointment of three new members of a state industrial commission and termination of the terms of the incumbent members, was held ineligible to receive an appointment as a new commission member. The rationale of the holding in the case was that the legislation created a vacancy which provided an opportunity for appointment and the creation of such vacancy was tantamount to a creation of new office. The court divided three-two on the decision.

The language of our constitutional provision is clear and unambiguous, and we do not think that its meaning can be extended to mean a vacancy created in an existing office. Even if that can be done, *Jugler* is inapplicable to the situation in this submission. Here, there is a serious question as to the right of the present incumbent of the office of Maui county chairman to continue in office and it cannot definitely be said that Act 47 created a vacancy. In *Jugler*, the legislation ended the terms of two commission members who, but for the amendment, were clearly entitled to remain in office for two years and four years respectively.

We likewise answer the third question in the negative. Act 88 does not increase the salary of the Maui county chairman. It applies to public employment generally, and entitles a public officer or employee, who is eligible for workmen's compensation benefits, to the difference between his regular salary and his temporary disability compensation under the workmen's compensation law in addition to such temporary disability compensation, provided he has accumulated sick leave allowance from which the difference may be deducted.

The benefit under the Act is available only to an employee who has suffered temporary disabling injury which qualifies him for workmen's compensation and who has accumulated sufficient sick leave allowance from which the difference may be deducted.

In *State ex rel. Todd* v. *Reeves*, 196 Wash. 145, 82 P.2d 173, the court held that a statute relating to retirement of judges did not disqualify a legislator, who participated in the enactment of the legislation, from seeking a judicial office because emolument implies actual pecuniary gain rather than some imponderable and contingent benefit. Similarly, we think that the benefit con-

templated in Act 88 is too remote and contingent to disqualify Cravalho from the office of Maui county chairman.

A negative answer to the fourth question follows from our answers to the second and third questions. Also, the same answer follows from our holding regarding the issuance of injunction in *Bulgo* v. *County of Maui.*

*Frank D. Padgett* (*Padgett & Greeley* of counsel) for plaintiff.

*Kase Higa,* County Attorney, County of Maui, for defendant G.N.T. Enomoto.

*William F. Crockett* and *James T. Funaki* for defendant Elmer F. Cravalho.

*Bertram T. Kanbara,* Deputy Attorney General, for the Attorney General, amicus curiae, appeared but did not argue.